UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
ORREL EVANS,

                            Plaintiff,                      **AMENDED COMPLAINT**

     -against-                                   **15-CV-4352 (KAM) (RML)**

CITY OF NEW YORK, P.O. DONALD SADOWY
SHIELD NO. 13497, SERGEANT CARLOS LEWIS
SHIELD NO. 550 and UNIDENTIFIED NEW YORK
CITY POLICE OFFICERS                     **JURY TRIAL DEMANDED**

                        Defendant(s).
----------------------------------------------------------X
The plaintiff, complaining of the defendants, by his attorney, DEBRA E. O'BRIEN,

ESQ., respectfully shows to this Court and alleges:

## JURISDICTION

1      Jurisdiction is founded upon the existence of a Federal Question.

2      This is an action to redress the deprivation under color of statute, ordinance, regulation, custom,

or usage of rights, privileges, and immunities secured to plaintiff by the Fourth and Fourteenth

Amendments to the Constitution of the United States pursuant to 42 U.S.C. § 1983.

3      Jurisdiction is founded upon 28 U.S.C. Sections 1331, 1343(3 & 4).

4      Venue is appropriate pursuant to 28 U.S.C. Sections 1391 (b) (1 & 2).

## PARTIES

5      The plaintiff, ORREL EVANS, is a resident of the County of Kings in the City and State of New

York and he is an African-American male.

6      Upon information and belief, that at all times hereinafter mentioned, the defendant, CITY OF NEW

YORK, (NYC) was and still is a municipal corporation duly organized and existing under and by virtue of

the laws of the State of New York, and that at all times relevant defendants POLICE OFFICER DONALD

SADOWY Shield No. 13497, SERGEANT CARLOS LEWIS Shield No. 550 and UNIDENTIFIED POLICE OFFICERS were acting for, upon, and in furtherance of the business of their employer and within the scope of their employment.

7       Upon information and belief, that at all times hereinafter mentioned, defendants were employed by the defendant, NYC, as members of its police department.

Upon information and belief, that at all times hereinafter mentioned, the defendant, NYC, its agents, servants and employees operated, maintained and controlled the NEW YORK CITY POLICE DEPARTMENT (NYPD), including all the police officers thereof.

8       The NYPD, is a local governmental agency, duly formed and operating under and by virtue of the Laws and Constitution of the State of New York and the commissioner of the NYPD is responsible for the policies, practices and customs of the NYPD as well as the hiring, screening, training, supervising, controlling and disciplining of its police officers and civilian employees and is the final decision maker for that agency.

9       This action arises under the United States Constitution, particularly under provisions of the Fourth and Fourteenth Amendments of the Constitution of the United States, and under federal law, particularly the Civil Rights Act, Title 42 of the United States Code, Section 1983.

10      Each and all of the acts of the defendants alleged herein were done by the defendants, acting as state actors acting under the color of law.

## STATEMENT OF FACTS

11. On or about July 24, 2012, I met up with my childhood friend Dennis Graves to go to a hobby shop in Canarsie.

12, Mr. Graves picked me up in his burgundy Dodge Charger on Marcus Garvey Boulevard between Monroe and Madison in the borough of Brooklyn.

13. His godson was in the back seat of the car.

14. Before meeting with Mr. Graves, I had met with my parole officer.

15. In the vicinity of Sterling Place and Buffalo Avenue, Mr. Graves car was stopped by Defendant Police Officer Donald Sadowy and other unidentified New York City police officers.

16. Mr. Graves was told by the officers that the vehicle was being stopped because the windows were tinted.

17. The windows of Mr. Graves' vehicle were not tinted.

18. Mr. Graves was asked to step out of the car and taken to the rear of the vehicle.

19. He was searched while handcuffed at the rear of the vehicle.

20. Four officers were present, three of them were white and one of them appeared to be West Indian.

21. I was taken out of the car and taken to the back of the vehicle where I was searched while handcuffed.

22. A white bald officer searched me more than once while wearing plastic gloves. He found nothing on my person.

23. I saw the West Indian officer hand what appeared to be a plastic bag to the bald white officer.

24. He came over to me and put his gloved hand down my underwear and took his hand out producing the plastic bag stating "Lookie here"

25. As soon as he did this, I looked at him and stated "Officer that's not mine. I didn't have nothing on me"

26. Both Mr. Graves and myself were placed under arrest and put in the back seat of an unmarked vehicle and taken to the 73rd Precinct.

27. The other two officers drove Mr. Graves vehicle following our vehicle.

28. At the precinct, an African-American captain told Mr. Graves to have somebody pick up the car and the kid (his godson).

29. They took my belongings including my keys, my cell phone, a diamond accuramaster watch and my cash which was approximately $600.00.

30. The property invoice only recorded my cash.

31. At the precinct, I was taken upstairs where I was shown mugshots by eight or nine officers.

32. I was questioned if I could identify anybody in the mugshots who was dealing in drugs or guns.

33. I was told if you give us some information on somebody, we'll let you out right now"

34. I responded that I didn't have information on anybody because I'm a working person.

35. Officers said "Tell us the stuff belongs to Dennis and you can walk" I refused to say this because "the stuff" didn't belong to either of us.

36  After I was taken back downstairs, I saw them then take Mr. Graves upstairs.

37.  Although other arrestees were taken to central booking, Mr. Graves and I were held separated from each other at the precinct until the next morning.

38. The following morning Mr.Graves and  me were taken in a van to Manhattan.

39. While travelling in the van, I learned that they had tried the same tactics on Mr. Graves that they tried on me when he was questioned by officers upstairs at the precinct.

40. We also learned that we had been indicted by a grand jury in Manhattan.

41. From my legal aid attorney, I learned that the charging document stated that crack cocaine was found in the console of Mr. Graves automobile.

42. Defendant Police Officer Donald Sadowy Shield No. 13497 gave this false testimony to the grand jury.

43. At arraignment, my bail was set at $50,000 cash with the requirement of several bail hearings and guarantors which was a ransom bail that I could not make.

44. I was taken to the Tombs where I was detained for a couple of months.

45. On one occasion when I was being transferred back from a court appearance in Manhattan Criminal

Court, the bus that was carrying myself and other prisoners was involved in a motor vehicle accident and I injured my head.

46. This accident caused me to suffer headaches which I was treated for while incarcerated and which continue up until this present day.

46. After the Tombs, I was transferred to the Brooklyn House of Detention where I remained for a couple of months until I was transferred to Rikers Correctional Facility in December 2012.

47  At  Rikers, I  was forced to spend most of my time in solitary confinement, in the box.

48.  On May 23rd 2013, I learned the news that my case was to be dismissed when I was waiting in the holding cell to go before the judge,

49. When the C.O. came to the holding cell to bring me before the judge  I put my hands behind my back to be rear handcuffed  and the C.O. told me "Relax you are a free man"

50. The charges against both myself and Mr. Graves were dismissed because it was determined that defendant Police Officer Donald Sadowy gave false testimony before the grand jury.

51.  I was incarcerated for a total of ten months, half of which were spent in solitary confinement until I finally was released.

## AS AND FOR A FIRST CAUSE OF ACTION ON BEHALF OF

## PLAINTIFF-VIOLATION OF THE PLAINTIFF'S RIGHTS

## PURSUANT TO 42 U.S.C.§1983 AND THE FOURTH

## AMENDMENT-FALSE ARREST

52. Plaintiff reiterates and realleges each and every allegation contained in the prior paragraphs with the same force and effect as is more fully and at length set forth herein.

53. The plaintiff's rights have been violated under the Fourth Amendment of the United States Constitution made applicable to the states via the Fourteenth Amendment pursuant to 42 U.S.C. § 1983, in that plaintiff was subject to being falsely arrested by the defendants.

54,   The defendants confined the plaintiff, in that plaintiff was not free to leave, defendants intended to confine plaintiff, plaintiff was conscious of confinement, plaintiff did not consent to confinement and confinement was not otherwise privileged.

55.   As a direct result of defendants' actions, plaintiff was deprived of rights, privileges and immunities under the  Fourth and Fourteenth Amendments of the United States Constitution, being more particularly, plaintiff's right to be free from arrest without probable cause.

56.   The false arrest of the plaintiff was caused by the defendants, without legal justification, without authority of law and without any reasonable cause or belief that the plaintiff was in fact guilty of crimes.

57.   The various defendants who knew of the false arrest and allowed the illegal detention of the plaintiff to commence and/or continue, are liable to the plaintiff via their failure to act pursuant to their affirmative duty to intervene.

58.   By reason of the false arrest, plaintiff was subjected to pecuniary harms, lost employment opportunities, he was subjected to great indignities, humiliation, anxiety, he was forced to appear in court, he spent time in jail, he was prevented from conducting his normal affairs of business, he was searched, handcuffed, strip searched and he was subjected to numerous other harms.

59.   Defendant Sergeant Carlos Lewis Shield No. 550 and other supervisors within the NYPD who knew of the false arrest and continued to allow and/or participate and/or cause the arrest of the plaintiff and who either directly participated in the violation of plaintiff's rights or who after learning of the violation, failed to

remedy the wrong, are liable to the plaintiff for the violation of his rights pursuant to the Fourth Amendment and via the principle of supervisor liability.

60.     By reason of the aforesaid, the plaintiff is entitled to compensatory damages in a sum to be determined at trial, he is entitled to an award of punitive damages and attorneys' fees are appropriate pursuant to 42 U.S.C. § 1988.

**AS AND FOR A SECOND CAUSE OF ACTION
ON BEHALF OF PLAINTIFF
VIOLATION OF THE PLAINTIFF'S RIGHTS PURSUANT TO
42 U.S.C. § 1983 AND THE FOURTH AMENDMENT
MALICIOUS PROSECUTION**

61.   Plaintiff repeats, reiterates and realleges each and every allegation contained in the prior paragraphs with the same force and effect as is more fully and at length set forth herein.

62.   Plaintiff's rights have been violated under the Fourth Amendment of the United States Constitution pursuant to 42 U.S.C.§1983, in that the plaintiff was maliciously prosecuted by the defendants.

63.   The  malicious prosecution was initiated by the defendants, their agents, servants and employees, without any legal justification and without probable cause in that the defendants caused the commencement and continuation of criminal proceedings against the plaintiff, the proceedings terminated in favor of the plaintiff via a dismissal upon the motion of the prosecutor and in that the action was commenced and continued intentionally and with malice and deliberate indifference to plaintiff's rights.

64.   By reason of the unlawful malicious prosecution, the plaintiff was subjected to pecuniary harms, great indignities, humiliation, anxiety, he was forced to spend ten months in jail as well as being forced to make numerous forced court appearances, he lost employment opportunities, he was searched, strip searched, handcuffed, he was separated from his family and he was subjected to numerous other harms.

65.   The indictment of the plaintiff was secured by dishonest statements made by the defendant Police Officer Donald Sadowy which were revealed prior to trial resulting in the dismissal.

66.     All of the defendants who knew of the commencement and continuation of the malicious prosecution of the plaintiff are liable to the plaintiff via their failure to exercise their affirmative duty to intervene.

67.     Defendant Sergeant Carlos Lewis Shield No. 550 and other Unidentified New York City Police Officers who are supervisors within the defendant NYC's Police Department and who continued to allow and/or participate in the prosecution of the plaintiff and who either directly participated in the violation of plaintiff's rights or who after learning of the violation failed to remedy the wrong are liable to the plaintiff for violating his rights pursuant to the Fourth Amendment.

68.     By reason of the aforesaid, the plaintiff is entitled to compensatory damages in a sum to be determined at trial, he is entitled to an award of punitive damages and attorneys' fees are appropriate pursuant to 42 U.S.C. § 1988.

## AS AND FOR A THIRD CAUSE OF ACTION
### ON BEHALF OF PLAINTIFF
### VIOLATION OF PLAINTIFF'S FOURTH AMENDMENT RIGHTS
### BY THE CITY OF NEW YORK,
### i.e., MONELL CLAIM

69.     Plaintiff repeats,reiterates and realleges each and every allegation contained in the prior paragraphs with the same force and effect as is more fully and at length set forth herein.

70.     The plaintiff's rights have been violated under the Fourth Amendment to the United States Constitution as made applicable to the states via the Fourteenth Amendment by the defendant, City of New York.

71.     Defendant City of New York as well as Defendant Sergeant Carlos Lewis Shield No. 550 and other unidentified police officers who were supervisors and final decision makers as a matter of policy and practice, have with deliberate indifference failed to properly train, discipline, sanction and retrain police officers, despite their knowledge of the recurring problem of officers bringing false charges, and that there has been no meaningful attempt on the part of City of New York to investigate or forestall further incidents.

72.     The defendant City of New York operates an ineffective Civilian Complaint Review Board, which wrongfully exonerates and fails to substantiate legitimate claims against officers.

73.     The defendant City of New York operates an ineffective Internal Affairs Department of the City's police force, which wrongfully exonerates and fails to substantiate legitimate claims against officers when brought by civilians.

74.     The NYPD as a *de facto* policy and practice fails to take disciplinary action against members of the NYPD who are dishonest in swearing to facts resulting in false arrests and malicious prosecutions and rarely, if ever, are officers disciplined for failing in their affirmative duty to intervene to prevent constitutional violations from taking place in their presence.

75.     As a result of City of New York's indifference to the ineffectiveness of the CCRB and IAB, the defendant P.O. Donald Sadowy, Sgt. Carlos Lewis and unidentified NYC police officers in the instant case felt free to, and did in fact, violate the plaintiff's rights.

76.     In the instant matter, due to the routine practices i.e., the *de facto* policies of the NYPD, officers who saw and/or knew of the plaintiff being falsely arrested and/or maliciously prosecuted failed to intervene on his behalf.


77.     By reason of the aforementioned, the plaintiff was subjected to pecuniary harms, great indignities, humiliation, anxiety, he was forced to spend ten months in jail as well as being forced to make numerous forced court appearances, he lost employment opportunities, he was searched, strip searched, handcuffed, he was separated from his family and subjected to numerous other harms.

78.     By reason of the aforesaid, the plaintiff is entitled to compensatory damages in a sum to be determined at trial and that an award of attorneys' fees is appropriate pursuant to 42 U.S.C. §1988.

WHEREFORE, plaintiff demand judgment against the defendants in compensatory and punitive damages in sums to be determined at trial on the First Cause of Action; in compensatory and punitive damages in sums to be determined at trial on the Second Cause of Action; and in compensatory damages in a sum to be determined at trial on the Third Cause of Action, along with reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 on all plaintiff's causes of action together with costs and disbursements of this action; a trial by jury of all issues alleged in this complaint; and such other and further relief as this Court may deem just and proper under the circumstances.

Dated:  March 21, 2016
         Queens, New York

_____
DEBRA E. O'BRIEN (DO-9536)
Attorney for Plaintiff
39-01 Main Street Ste. 202
Flushing, New York 11354
(718) 539-3030

To:    Aimee Lulich Esq.
       Asst. Corporation Counsel
       100 Church Street
       New York, New York 10007
       (212)356-2369